NATION WIDE, INC., a New Jersey
corporation, Plaintiff,

v.

Edward P. SCULLIN, Thomas F. Park,
Jr. and Robert M. Brown, jointly
and severally, Defendants.

Civ. No. 676–65.

United States District Court
D. New Jersey.

Aug. 12, 1966.

Clarence Blitz, Atlantic City, N. J., for plaintiff.

Kisselman, Devine, Deighan & Montano, Camden, N. J., by Neil F. Deighan, Jr., Camden, N. J., for defendants.

## OPINION

COHEN, District Judge:

Plaintiff, Nation Wide, Inc., a New Jersey corporation moves for Summary Judgment under 28 F.R.Civ.P.Rule 56, against the defendants, Pennsylvania residents, on a contract alleged to be one of absolute personal guaranty for performance of a prime contract made between plaintiff and P. & S. Frozen Food Company, a corporation of which the defendants are officers and directors.

The primary contract between plaintiff and P. & S. Frozen Food Company, the performance of which defendants guaranteed, was made on September 6, 1963. It purported to be a lease, referring to the parties throughout as "lessor" and "lessee," under the terms of which plaintiff "leased" certain baking equipment, to be supplied by Quaker City Baking Equipment Company, to P. & S. Frozen Food Company, for a term of 60 months, at a monthly rental of $750.00, beginning September 6, 1963, and payable on the sixth day of each month thereafter for the balance of the term, or a total of $45,000.00.[1] No deposit of security was required to assure faithful performance of this agreement. Instead, on September 6, 1963, defendants Scullin, Park and Brown, officers and directors of the frozen food company, pledged their personal credit for unconditional guaranty of their corporation's performance, as an inducement for plaintiff to undertake the contract of September 6, 1963.[2]

---

[1.] The contract also provided an option to purchase, although no term of time within which it might be exercised was specified. Paragraph 29 of Exhibit A attached to the complaint provides:

"29. Anything herein to the contrary notwithstanding, it is understood and agreed that the Lessee shall have the option to purchase the aforesaid equipment in consideration of the payment of One Dollar ($1.00) to the Lessor.

In the event Lessee exercises said option, Lessor agrees to deliver to Lessee a Bill of Sale or such other instruments as may be necessary to authenticate Lessee's title to the equipment."

[2.] "For value received and in consideration of and as an inducement for the Nation Wide, Incorporated (hereinafter 'Corporation') to enter into a contract dated

P. & S. Frozen Food Company took possession of the equipment in question, placed it in its premises in Winslow Township, Atlantic County, New Jersey, which plant it leased from Garden State Cold Storage Co., Inc., and made monthly payments to plaintiff, totaling $12,500.00 until default.

On February 15, 1965, Garden State Cold Storage Co., Inc., distressed the equipment for a three-months' rental delinquency of $12,900.00. The equipment was independently appraised at $19,100.00, and on March 18, 1965, sold for that amount to the landlord as the highest bidder. On March 19, 1965, plaintiff obtained from the defendants and filed a financing statement with the New Jersey Secretary of State, under the Uniform Commercial Code, R.S. 12A:9–101 et seq. N.J.S.A. This action was taken at a time when the defendants knew bankruptcy was imminent, for as officers and directors of the corporation they filed a voluntary petition, March 24, 1965.

Thereafter, plaintiff filed a proof of claim for $32,250.00 in the bankruptcy court purporting to be a secured creditor. However, the claim having been filed within 4 months of the petition was disallowed, thereby relegating plaintiff to the status of a general creditor.

In support of its motion, plaintiff urges that the defendants bound themselves to an absolute, unconditional guaranty for the performance of the prime contract obligation of the debtor corporation. It argues that, despite the defendants' allegation of its failure to protect the collateral under security transaction requirements, whether by reason of negligence or mistaken judgment, the guarantors are neither prejudiced nor relieved of their absolute obligation to save plaintiff harmless upon the default of the prime debtor.

In resisting plaintiff's motion for summary judgment, defendants contend that the transaction between plaintiff and P. & S. Frozen Food Company was actually a security transaction, whereby plaintiff loaned it $30,000.00, and took back as security a lease agreement, subsequent to which it belatedly filed a financing statement. They argue that the $30,000.00 loan was reduced by payments totaling $12,750.00, leaving a balance of $17,500.00 plus interest. Further, that because plaintiff failed through negligence to protect its lien under the security agreement, defendants, as sureties, are discharged from any personal obligation to plaintiff by reason of their company's default. Defendants also assert as defenses that plaintiff, itself, breached the lease agreement, in that it never had title to the equipment which it purported to lease; and that neither plaintiff nor P. & S. Frozen Food Company having either title or possession, such being in a third party, Garden State Cold Storage Co., Inc., neither P. & S. Frozen Food Company nor any of the defendants are liable for the balance of the lease payments. Additionally, they urge that plaintiff having jeopardized and made possible the loss of the security, which security sold for more than the balance of the outstanding obligation for rents,

September 6, 1963 * * * with the P. & S. Frozen Food Company, Inc. (hereinafter called 'Buyer') for certain equipment to be used by the said Buyer. The Undersigned, Edward P. Scullin, Thomas F. Park, Jr. and Robert M. Brown (hereinafter called 'Guarantors'), *unconditionally guarantee* the full performance and observance *of all covenants, conditions and obligations* of the said contract provided to be performanced and observed by Buyer, its successors and assigns, and do hereby make themselves personally liable, jointly and severally,

for such performance of said contracts." (sic, contract)

&ast; &ast; &ast; &ast; &ast;

"Guarantors agree that their liability under this guaranty *shall be primary* and that in any right of action which shall accrue to the Corporation under any contracts, the Corporation may, at its option, proceed against Guarantors, jointly or severally, together with the Buyer, jointly or severally, or may proceed against Guarantors, jointly or severally, without having commenced any action against or having obtained any judgment against Buyer." (Emphasis added.)

and future interest not having been earned, plaintiff has sustained no damages other than those occasioned by its own conduct.

■ Such are the contentions of the parties and the events giving rise to this case, in which it appears that the material facts are not in issue.[3] The dispute involves a question of law, i. e., a construction of the legal effect to be given to the intention of the parties and is, consequently, ripe for summary judgment. A consideration of all the circumstances surrounding this transaction, as pleaded and supported by opposing affidavits, creates no genuine issue of material fact foreclosing summary judgment. Robert L. Ferman & Co. v. General Magnaplate Corp., 33 F.R.D. 326 (D.C.N.J.1963); Frederick Hart & Co. v. Recordgraph Corp., 169 F.2d 580 (3 Cir. 1948).

■ The agreement between plaintiff and P. & S. Frozen Food Company, and that of defendants with plaintiff executed the same day, demonstrates that defendants pledged their guaranty absolutely and without limitation, in order to induce the plaintiff to advance $30,000.00 to their company for the purchase of the equipment. And that to secure payment of $45,000.00 over a five year period, an installment arrangement was cast in the form of a lease with an option to purchase, including a provision for a "bonus," or interest, to be spread over the term of the agreement. However harsh a bargain it may seem in retrospect, the defendants' obligation was voluntarily assumed and made absolute by its terms. Joe Heaston Tractor & Imp. Co. v. Securities Accept. Corp., 243 F.2d 196 (10 Cir. 1957); Robert L. Ferman & Co., supra. These defendants were not cast in the familiar role of accommodation endorsers, or sureties, a status which would entail less stringent responsibilities in the eyes of the law. Rather, they were businessmen—the principal actors, both as individuals and in their corporate *alter ego*—who undertook to perform this arrangement. It is reasonable to assume, nothing contrawise in the record, that they were possessed of some measure of business acumen, when they undertook to guarantee their company's contract performance.

■■ The paramount obligation here is the guaranty contract of the defendants, the consideration for which was the contract of the corporation. Whatever form the corporate contract may have taken, whether partaking of the characteristics of a lease or a security transaction,[4] is of no consequence. Their obligation was unconditional. Duff v. Trenton Beverage Co., 4 N.J. 595, 604, 73 A.2d 578 (1950); Edwards v. Leopoldi, 20 N.J.Super. 43, 53, 89 A.2d 264 (App.Div. 1952). And the law in New Jersey is well settled that the courts will not make a different or better bargain for the parties than they have seen fit to make for themselves. William Berland Realty Co. v. Hahne & Company, 26 N.J.Super. 477, 486, 98 A.2d 124 (Ch.Div.1953), mod. 29 N.J.Super. 316, 102 A.2d 686 (App. Div.1954), but not in basic principle; *Robert L. Ferman & Co.*, supra. From a reading of the contract, the intention of the parties is clear; the defendants owed in full that obligation which their corporation, P. & S. Frozen Food Company, undertook.

■ The proposition of law advanced by defendants, that their undertaking by this contract was only a suretyship and that, consequently, plaintiff's negligent failure to protect its interest under a security transaction discharges their obligation, was similarly raised and dis-

---

3. The affidavit of defendant Edward P. Scullin, president of the frozen food company, made obviously on behalf of all defendants, accords in all respects with the affidavit of facts filed by plaintiff setting forth the express terms of the contracts; its only departure is argumentation.

4. "Whether a lease is intended as security is to be determined by the facts of each case; * * *. Uniform Commercial Code, 12A:1-201(37), N.J.S.A.

posed of in *Joe Heaston Tractor & Imp. Co.*, supra. 243 F.2d at page 198:

> " * * * that by reason of such failure (the filing of chattel mortgages taken to secure loans) the subrogation rights of the Guarantor were lost and the Guarantor was released from its obligation." (Parenthesis supplied.)

The defendant there, as do the defendants here, relied upon the law of suretyship as contained in Stearns on Law of Suretyship, 5th ed. 188 § 6:49, and 50 Am.Jur., Suretyship § 118, contending that there exists by legal implication an agreement that the lien of security will be preserved by a proper and timely filing, or recording, a failure of which relieves the surety to the extent of the loss sustained, i. e., *pro tanto*. In *Heaston Tractor*, supra, the agreement was found to be one of absolute guaranty, hence, the foregoing rule of suretyship did not apply. The guaranty agreement in the instant case is no less an absolute assumption of liability in the event of default by the principal debtor, an event which did in fact occur. As stated concisely in *Heaston Tractor*, supra, 243 F. 2d at page 199:

> " * * * a guaranty is a collateral agreement to pay a debt or perform a duty for another in case of default which may be enforced separately from the primary obligation. It is not necessary to proceed against the primary debtor. An unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract upon default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform."

Significantly, under the Uniform Commercial Code, 12A:1-201(40), N.J.S.A., "Surety" includes guarantors.

The other contentions of defendants are such as should have been more properly addressed to the contract of the corporation which they guaranteed, but the corporation is not a party to this suit. The argument regarding the measure of damages ignores the fact that the corporation borrowed $30,000.00 for which it agreed to repay $45,000.00 over a five year period, or a straight $3,000.00 bonus per year. The corporate obligation was fixed and clear; the guaranty, equally so. The legerdemain employed by the parties to accomplish their mutual purposes cannot now be employed to defeat their obligations. The money advanced was on behalf of P. & S. Frozen Food Company, and was in fact devoted to its corporate use, hence not interdicted as usurious under New Jersey law. R.S. 31:1-1, 1-3, N.J.S.A.; Feller v. Architects Display Buildings, Inc., 54 N.J. Super. 205, 148 A.2d 634 (App.Div. 1959); Ferdon v. Zarriello Brothers, Inc., 87 N.J.Super. 124, 208 A.2d 186 (Law Div.1965).

Defendants further urge (1) that the plaintiff had no title to the equipment when the guaranty contract, as well as the corporate contract, was made, thus, there could not in fact have been a lease, since it could not lease that which it did not own; and (2) that by virtue of the landlord's distress for rent, possession of the equipment was withdrawn from the corporation through the plaintiff's failure to file a security statement as protection of the security against the claims of third parties, thus, the corporation, as well as the guarantors, was excused from making any further payments. These contentions cannot prevail. Plaintiff had sufficient proprietary interest through its arrangement with the supplier of the equipment, Quaker City Baking Equipment Company, to provide it with color of title in its transaction with the frozen food company and the defendants. In regard to the loss of possession through the distress and sale for rent on the leasehold, this came about through the default of defendants' own corporation, and with their knowledge and acquiescence. Such was not a breach of plaintiff's contract with the corporation. Any failure to protect the security by timely filing, if negligent at all, does not discharge an absolute

guaranty. *Heaston,* supra; 38 C.J.S. Guaranty § 81, pp. 1250–1251. The filing of the financing statement, although accomplished by the plaintiff belatedly, was with the knowledge and cooperation of defendants; but its legal efficacy as security protection was defeated by the conduct of the principal debtor, defendants' corporation, by its own conduct resulting in the landlord's distress and sale for delinquent rent, as well as its filing of a voluntary petition in bankruptcy thereafter. These circumstances, over which defendants had control, are certainly not such as can relieve them of their guaranty. Moreover, defendants' rationalization that plaintiff's failure to protect the security by timely filing of a financing statement under the Uniform Commercial Code, 12A:9–302, N.J.S.A., entitles them to a *pro tanto* reduction of their ultimate, total obligation to the extent of $19,100.00, i. e., the value of the equipment in the hands of the distressing landlord, lacks substance. It overlooks the fact that defendants, as well as plaintiff, had a substantial interest in protection of the security, as against third parties, in light of their guaranty. They, as well as plaintiff, could have seen to the filing under the Code.

In conclusion, the principal debtor being in default, with an outstanding obligation due and owing in the amount of $32,250.00, together with interest thereon at the legal rate from the time of default, the guarantors must assume their individual and joint responsibility under their guaranty contract. Additionally, in accordance with paragraph 20 of the corporate agreement, they are chargeable with an attorney's collection fee of 18% of the balance due. Such a provision is customary and not inconsistent with this type of commercial transaction.

In accordance with the foregoing, summary judgment on behalf of the plaintiff will be granted.

Counsel for plaintiff shall submit an appropriate order.