**FIREMAN'S FUND INSURANCE COMPANY**

v.

**JOSEPH J. BIAFORE, INC., et al.**

**Civ. A. No. 73–479.**

United States District Court,
E. D. Pennsylvania.

Nov. 1, 1974.

Paul J. Donnelly, Philadelphia, Pa., for plaintiff.

Henry J. Horstmann, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In this action, plaintiff is a California corporation engaged in the business of writing surety bonds and defendant corporations are Pennsylvania corporations engaged in the business of concrete construction. The individual defendants, Joseph and Helen Biafore, are president and secretary-treasurer, respectively, of the corporate defendants. The jurisdiction of this Court is based upon diversity of citizenship and an amount in controversy in excess of $10,000 on a cause of action seeking enforcement of an indemnity contract entered into between plaintiff and defendants on May 19, 1965. Specifically, plaintiff, pursuant to the terms of the contract, seeks to recover from the indemnitors for losses, expenses, and attorney's fees incurred by reason of the bankruptcy of Bethlehem Concrete Corporation and plaintiff's subsequent liability, as surety, under certain Performance and Labor and Materials Bonds executed by Bethlehem Concrete.

In their answer, defendants set forth essentially two affirmative defenses. First, defendants assert that the claims set forth in the complaint are barred by the statute of limitations. Defendants now have abandoned this defense, properly conceding that the indemnity agreement in issue is a "specialty" contract or a contract under seal and, accordingly, is governed by a twenty-year limita-tion period. Secondly, defendants assert that the claims set forth in the complaint should be reduced by the value of the accounts receivable and other assets of Bethlehem Concrete Corporation in which plaintiff at one time held a security interest. Plaintiff's security interest in the accounts receivable and other assets was invalidated by order of the referee in bankruptcy, which was affirmed by the District Court. In the Matter of Bethlehem Concrete Corporation, 306 F.Supp. 1047 (E.D.Pa.1969). Presently before the Court is plaintiff's motion for summary judgment.

The relevant facts are not in dispute and are as follows: On May 19, 1965, plaintiff and defendants entered into an indemnity agreement, whereby defendants agreed to indemnify plaintiff against all liability, loss, costs, damages, fees of attorneys and other expenses plaintiff might incur or sustain in consequency of the execution of the bond. Thereafter, plaintiff, as surety, executed a series of three Performance and Labor and Materials Bonds for Bethlehem Concrete Corporation. First, plaintiff was named as surety on Performance and Labor and Materials Bonds involving concrete construction at Heath Village, New Jersey and naming Bethlehem Concrete as principal and the Robert Chuckrow Construction Company as obligee. [Chuckrow Construction Contract.] Secondly, plaintiff was named as surety on Performance and Labor and Materials Bonds involving concrete construction at Freedom High School, Bethlehem, Pennsylvania, and naming Bethlehem Concrete as principal and Belmont Contracting Company as obligee. [Belmont Construction Contract]. Finally, plaintiff was named as surety on Performance and Labor and Materials Bonds involving concrete construction at the Lehigh Valley Industrial Park and naming Bethlehem Concrete as principal and Allen Bros. and O'Hara as obligee.

Upon learning that Bethlehem Concrete was in financial distress, plaintiff on July 27, 1966, dispatched a letter to defendants advising them that it had set

up reserves in the amount of $25,000 and called upon defendants to deposit an equal sum, pursuant to paragraph three of the indemnity agreement.[1] According to plaintiff, no deposit was ever made by defendants. Thereafter, on August 1, 1966, Bethlehem Concrete executed an assignment of certain accounts receivable and certain assets[2] to plaintiff.

On August 9, 1966, plaintiff filed financing statements with the Secretary of the Commonwealth and the Recorder of Deeds of Northampton County. Thereafter, tax liens were filed against Bethlehem Concrete by the Commonwealth of Pennsylvania and by the Federal government. Upon the filing of the federal tax lien on October 13, 1966, Bethlehem Concrete ceased performance of its contracts. Thereafter, Joseph J. Biafore, Inc., pursuant to its obligation under the indemnity agreement completed the work initiated by Bethlehem Concrete in the Chuckrow Construction Contract and the Belmont Construction Contract.

On July 27, 1967, Bethlehem Concrete was adjudicated a bankrupt. In the course of the bankruptcy proceedings, the referee entered an order invalidating plaintiff's security interest in the accounts receivable and equipment of Bethlehem Concrete by reason of its failure to perfect its security interest by properly filing a financing statement with the Prothonotary of Northampton County rather than the Recorder of Deeds as required by 12A P.S. § 9–401(1)(c). This order was affirmed by the District Court. In addition, the equipment sold by Biafore, Inc., to Beth-

lehem Concrete was sold by the trustee in bankruptcy for $6,957.50.

As a result of the failure of Bethlehem Concrete to perform its contract and make payment for labor and materials, plaintiff paid the following claims, for which plaintiff now seeks recovery under the agreement:

First, plaintiff paid $13,365.04 to United Materials Company under the Allen Brothers and O'Hara Construction Contract. Upon recovery of $576.55, plaintiff now claims $12,788.49. Secondly, plaintiff paid sums totaling $32,503.66 for labor and materials furnished under the Chuckrow Construction Contract. Upon recovery of $9,250, plaintiff now claims $23,253.66. In addition, plaintiff seeks attorney's fees incurred in connection with its liability as surety under the Labor and Materials and Performance Bonds in the amount of $3,227.97.

While defendants do not dispute their liability under the indemnity agreement, they argue that plaintiff's uncontroverted failure to perfect its security interest in the accounts receivable of Bethlehem Concrete precludes the entry of summary judgment in its favor and requires the reduction of their ultimate liability by such amount. In so arguing, defendants rely on Section 132 of the Restatement of Law of Security, involving the surrender or impairment of security by a creditor and providing as follows:

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the securi-

---

1. Paragraph three of the indemnity agreement provides in pertinent part:
    "If the Surety shall set up a reserve to cover any liability, claim, suit or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve . . . ."

2. Some of the assets assigned to plaintiff had apparently been sold to Bethlehem Con-

crete by Joseph J. Biafore, Inc. for the purchase price of $33,030.54. Bethlehem Concrete delivered to Biafore, Inc. a security agreement wherein it agreed to pay $33,535.-54 including interest for the equipment in addition to Bethlehem Concrete stock as collateral for the purchase price. On July 2, 1965, Biafore, Inc., filed financing statements perfecting its security interest.

ty, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

This provision of the Restatement has been adopted by the courts of Pennsylvania. *See* Girard Trust Bank v. O'Neill, 219 Pa.Super. 363, 281 A.2d 670 (1971), on which defendants rely. Accordingly, defendants argue that plaintiff's failure to take proper steps to preserve the value of the accounts receivable by properly filing a financing statement to perfect its security interest mandates the *pro tanto* reduction of their obligation. Plaintiff, on the other hand, argues that the language of paragraph ten of the indemnity agreement constitutes an "unconditional guarantee", rendering defendants liable under the indemnity agreement for the full amount claimed, notwithstanding its failure to perfect its security interest in the accounts receivable of Bethlehem Concrete Corporation. In support of its argument that the language of paragraph ten creates an unconditional guarantee and removes this case from the purview of Section 132 of the Restatement, plaintiff relies on Continental Leasing Corp. v. Lebo, 217 Pa.Super. 356, 272 A.2d 193 (1970); Joe Heaston Tractor & Implement Co. v. Securities Acceptance Corp., 243 F.2d 196 (10th Cir. 1957), and Nation Wide, Inc. v. Scullin, 256 F.Supp. 929 (D.N.J.1966), aff'd, 377 F.2d 554 (3d Cir. 1967). Thus, we are concerned with the language of paragraph ten of the indemnity agreement and Section 132 of the Restatement.

It is axiomatic that the expressed intent of the parties as manifested in words actually employed controls the Court's interpretation of a contract. Turning to the pertinent language of the agreement in question, we find in paragraph ten:

"*The liability of the Indemnitors hereunder shall not be affected* by the failure of the Principal to sign any such bond nor *by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained*; and if any party signing this instrument is not bound for any reason, this obligation shall still be binding upon each and every party." (Emphasis added)

This language is clear and unambiguous, and states unequivocally that defendants' liability is not affected by actions undertaken by the plaintiff regarding "any collateral that may have been obtained". Bethlehem Concrete Corporation executed an assignment of its accounts receivable and other assets on August 1, 1966,[3] and the plaintiff did, in fact, fail to perfect a security interest therein.[4] That failure, however, in no way affects or alters the defendants' obligations under the agreement. The plaintiff could have returned or exchanged any collateral that may have been obtained, without any alteration, or change in the defendants' clear duty to indemnify, and it does not follow that plaintiff's failure to perfect a security interest in collateral lessens the unconditional contractual duty undertaken by the defendants. Not only was plaintiff free from any obligation to take collateral initially, but the contract manifestly provided that plaintiff's treatment of such collateral, if taken, would not alter or mitigate defendants' duty.

The essence of defendants' contention is that plaintiff breached an implied condition in the contractual relationship which arose by operation of law as outlined in § 132 of the Restatement of Security. However, we think the Restatement rule is inapplicable here. In Continental Leasing Corp. v. Lebo, *supra,*

---

3. See Footnote 2, *supra.*

4. *See* In the Matter of Bethlehem Concrete Corporation, 306 F.Supp. 1047 (E.D.Pa. 1969).

which arose from facts similar to these, the contract in question provided:

> "This shall be a continuing guaranty and indemnity and, irrespective of the lack of any notice to or consent of Undersigned, their obligations hereunder shall not be impaired in any manner whatsoever by any * * *
>
> "(b) adjustments, compromises or releases of any obligations, of Obligor, Undersigned, or other parties, *or exchanges, releases or sales of any security of Obligor, Undersigned or other parties*; * * *" 217 Pa.Super. at 361–362, 272 A.2d 193 at 196 [Emphasis added].

The Court concluded that Continental's failure to perfect a security interest in collateral for a loan to the principal debtor did not trigger the operation of the *Restatement* rule due to the explicit and unconditional nature of defendants' obligation set forth in the contract. As to the unconditional guaranty, the Court stated:

> " * * * [A]n unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform." 217 Pa.Super. at 363, 272 A.2d at 197.

Guided by the reasoning of Joe Heaston Tractor & Implement Company v. Securities Acceptance Corp., *supra*, and Nation Wide, Inc. v. Scullin, *supra*, the Court noted that the defendant

> " * * * could * * * have requested Continental to perfect the instrument for the benefit of Universal, i. e., protecting Universal's right of subrogation should it have become necessary for it to fulfill its guaranty obligation. No such request was made by Universal." 217 Pa.Super. at 363, 272 A.2d at 197.

We follow the reasoning of *Continental* and conclude that the instant contract is an unconditional guaranty which blocks the operation of the *Restatement* rule. The contract eliminates defendants' right to expect protection of its subrogation interest which might normally be engrafted upon a surety relationship. *See* Bank of New Jersey v. Heine, 464 F.2d 1161 (3d Cir. 1972). Moreover, in passing, we note that defendants may have breached their obligation to match the loss reserve established by the plaintiff on the Bethlehem Concrete contracts,[5] thus eliminating the "equitable considerations" which underpin the *Restatement* rule. See § 132, *comment* c.

The facts of Girard Trust Bank v. O'Neill, *supra,* render that case inapplicable. There the creditor bank took exclusive physical control of the accounts receivable for the *sole* purpose of collection, causing the defendant surety to suffer a legal disability, thereby preventing it from assuring reasonable and non-negligent collection by the bank. In addition, the agreement merely provided that the defendants were to become "surety" to Girard for all liabilities incurred, while the contract in question here grants the plaintiff unhampered freedom to release or surrender any collateral it "may" have obtained.

Defendants also contend that plaintiff failed to pursue claims against the Belmont Construction Company on the Freedom High School project. These claims arose when Biafore was required by plaintiff, pursuant to paragraph five of the indemnity agreement, to complete the subcontract which Bethlehem failed to finish in the fall of 1966. Apparently, because Biafore was never paid by Belmont, and because Biafore had been required to complete the project by the plaintiff, the defendant argues that the duty to collect the payments fell to the plaintiff. We are not persuaded that this position has any merit mainly because the plaintiff has not asserted any claims against defendant for amounts due from Belmont. In fact, plaintiff

---

5. See Footnote 1, *supra.*

subtracts an overage of $340.85 obtained from Belmont and credits that amount against the total of the claims in the Chuckrow and O'Hara projects. Thus, we conclude that plaintiff is entitled to summary judgment on the contractual issue.